UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| TRUE NORTH MAINE INC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:18-cv-00333-LEW |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant | | |

**DECISION AND ORDER ON DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiffs, True North Maine Inc. and Cooke Aquaculture, Inc. (collectively "True North" or "Plaintiffs"), bring this diversity action asserting claims against Defendant, Liberty Mutual Insurance Company for breach of contract and violation of Maine's Unfair Claims Settlement Practices Act as well as seeking both a declaratory judgment and injunctive relief following Liberty's refusal to provide a defense and indemnification against a suit initiated against Plaintiffs by Plaintiffs' employee, Brian Taylor. Amended Complaint (ECF No. 11). Defendant has requested dismissal of the action and has not otherwise answered the original or amended complaint. For the reasons explained herein, Defendant's motion to dismiss the original complaint is denied as moot and Defendant's motion to dismiss Plaintiffs' amended complaint is granted in part and denied in part.

## FACTS

I accept as true the Plaintiffs' well-pleaded allegations and will draw all reasonable inferences in the Plaintiffs' favor. Fed. R. Civ. P. 12(b)(6); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).

Plaintiff, True North Maine, Inc., is a Maine corporation with a place of business in Machiasport, Maine. Amended Complaint ("Am. Compl.") ¶ 1 (ECF No. 11). True North is a subsidiary of True North Salmon U.S., Inc., which is a wholly owned subsidiary of Cooke Aquaculture, Inc., a Canadian corporation. *Id*. ¶¶ 2, 3.

Both True North and Cooke were insured persons under three separate insurance policies issued by the Defendant, Liberty Mutual Insurance Company: (1) Canadian Commercial General Liability Policy No. 1000043008-04, effective June 14, 2016, through June 14, 2017 ("Canadian CGL Policy"); (2) United States Commercial General Liability Policy No. TB1-B71-170961-026, effective June 14, 2016, through June 14, 2017 ("U.S. CGL Policy"); and (3) Umbrella Liability Policy No. 1000050660-04, effective June 14, 2016, through June 14, 2017 ("Umbrella Policy"). Am. Compl. ¶ 5.

On August 11, 2017, Brian Taylor filed suit against True North and Cooke in Washington County Superior Court (the "Taylor Suit").[1] *Id.* ¶ 7. Taylor, a resident of Baileyville, Maine, alleges that while working at True North's Machiasport location on November 25, 2016, he purchased from a co-worker and then ingested heroin and/or

---

[1] *See Taylor v. True North Maine, Inc., et al.*, Docket No. WASSC-CV-17-15.

cocaine.[2] *Id.* ¶¶ 1, 17, 18-19. After ingesting the drugs, Taylor fell as he attempted to put on a pair of rubber boots needed for work, struck his head on the floor, and lost consciousness. *Id.* ¶ 20. Shortly thereafter, Taylor's coworkers discovered him in his unconscious state and claim to have called a True North supervisor and informed the supervisor about the injury. *Id*. ¶ 21. These same coworkers then moved Taylor into a shower stall, turned on the water, and left him in a state of unconsciousness for nearly four and a half hours. *Id.* ¶¶ 24-25. Eventually, a True North manager called 911. *Id.* ¶¶ 27, 28. After administering care for a heroin overdose and hypothermia at the scene, an ambulance crew transported Taylor to the hospital. *Id.* ¶¶ 30-33. Taylor was treated as an inpatient at various medical facilities over the next five months and alleges serious and permanent injuries "as a direct and proximate result of his co-workers' failure to furnish appropriate medical and related assistance." *Id.* ¶¶ 34-37.

As part of his suit, Taylor asserts two primary claims. First, Taylor asserts a claim for negligent failure to render competent aid arising from the actions of his co-workers, who he asserts acted as agents of True North when they failed to give him "competent medical and related assistance after he became helpless." *Id.* ¶¶ 44-46. Second, Taylor asserts a claim for premises liability and a negligent failure to furnish a reasonably safe workplace, arising from True North's failure to enforce its Alcohol and Drug Policy which prohibits "the possession, use and or sale of alcohol [or] illicit drugs." *Id.* ¶¶ 4, 48-51.

---

[2] Taylor alleges there was a pervasive or "near-pervasive drug culture at the workplace of True North" and that illegal drugs were "commonly and routinely sold, distributed, and used among many, but not all, employees within the workplace of True North Maine, Inc., during working hours." Am. Compl. Ex. A ("Taylor Compl.") ¶¶ 8, 9 (ECF No. 11-1).

True North timely notified Liberty of Taylor's claims and provided Liberty with a copy of the complaint. Am. Compl. ¶ 8. On August 18, 2017, Liberty sent a letter to Cooke and True North in which it denied both a defense against Mr. Taylor's claims and indemnification of True North and Cooke under all three policies. *Id*. ¶ 9. In its response, Liberty stated:

> There is no coverage under the US CGL policy as that policy specifically excludes claims for bodily injury to employees. While there is Employers Liability Coverage under the Canadian CGL policy, that coverage only applies to Canadian workers. The Umbrella Liability Policy follows the Canadian CGL and contains a similar insuring agreement, definitions and exclusions.

Am. Compl., Ex. B, 5 (ECF No. 11-2).

On June 18, 2018, True North and Cook asserted that Liberty owed them a duty to defend in the Taylor Suit. Am. Compl. ¶ 10. Liberty did not respond further and has continued to refuse to provide a defense or indemnification to True North. *Id*. ¶ 11. Furthermore, Plaintiffs assert Liberty has "refused to properly investigate the claim or to perform a proper comparison test as required by law." *Id*. ¶ 12.

## PROCEDURAL HISTORY

On July 24, 2018, True North filed the instant suit against Liberty in Washington County Superior Court. Compl. (ECF No. 1-3). Liberty promptly removed the suit to this Court. Notice of Removal (ECF No. 1). On September 27, 2018, Liberty moved to dismiss True North's complaint. Mot. Dismiss ("First Motion") (ECF No. 9). On October 18, 2018, True North filed an opposition brief to the amended complaint. Opposition to Def.'s Mot. Dismiss ("First Opposition") (ECF No. 10); Am. Compl. (ECF No. 11). In light of the amendment of the complaint, Liberty filed another motion to dismiss. Mot. Dismiss

Pl.'s First Am. Compl. ("Second Motion") (ECF No. 13). Plaintiffs then filed a second opposition brief. Opp. to Def.'s Mot. Dismiss First Am. Compl. ("Second Opposition") (ECF No. 14). Defendant filed two reply memoranda. Def.'s Reply Memo. ("First Reply") (ECF No. 12); Def.'s Reply Memo. ("Second Reply") (ECF No. 15).

## DISCUSSION

Federal Rule of Civil Procedure 15 permits a party to amend its pleading once as a matter of course within 21 days following service of a motion to dismiss under Rule 12(b). Because Plaintiffs filed their First Amended Complaint 21 days after Defendant filed its motion to dismiss, the operative pleading is the First Amended Complaint, which supersedes and supplants the original complaint. Additionally, because Defendant has filed a new motion to dismiss the amended complaint, I dismiss as moot the original Motion to Dismiss (ECF No. 9) and review the Motion to Dismiss the Amended Complaint (ECF No. 13). As the second motion incorporates arguments made in the first motion papers, I will at times discuss and cite arguments pressed in the original motion papers.

Plaintiffs assert claims against Liberty for breach of contract and violation of Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S. § 2436-A. In addition, Plaintiffs seek both a declaratory judgment and injunctive relief arising from Liberty's refusal to provide a defense and indemnification in the Taylor Suit. I will consider each cause of action in turn, mindful that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is not a crucible in which to resolve the merits, but rather a means to tests whether Plaintiffs have alleged "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez*, 590 F.3d at 41. To avoid dismissal, Plaintiffs' amended

complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## I. BREACH OF CONTRACT

In Count I of their First Amended Complaint, Plaintiffs allege that by refusing to provide a defense, the Defendant breached all three insurance contracts.[3] Am. Compl. ¶¶ 14-17. Thus, the core question presented is whether True North and Cooke have alleged sufficient facts to make out a plausible argument that Liberty owed them a duty to defend and indemnify against Taylor's claims.

Because the "duty to indemnify is merely a subset of the larger sphere of actions for which there is a duty to defend," I will limit my consideration to the question of a duty to defend. *Anderson v. Virginia Sur. Co.*, 985 F. Supp. 182, 187 (D. Me. 1998). If I find that Plaintiffs have alleged facts that state a plausible basis for finding a duty to defend under one or more policy, then the dispute over a corresponding duty to indemnify will also survive the motion to dismiss.[4]

---

[3] Because the Plaintiffs' claims depend on the policies, the policies are considered to have merged into the pleadings. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (stating that for documents "the authenticity of which are not disputed by the parties . . . or for documents sufficiently referred to in the complaint," there is a "narrow exception" which allows such documents to "merge[] into the pleadings," allowing courts to consider them under in a Motion to Dismiss). Accordingly, I will consider the coverage terms even though they are not recited in the pleadings.

[4] Defendant retains "the right to assert noncoverage as a defense to a claim for indemnification," even if the Court ultimately finds a duty to defend. *Harlor v. Amica Mut. Ins. Co.*, 150 A.3d 793, 801 (Me. 2016).

Under Maine Law, an insurer's duty to defend is defined broadly and applied liberally. *See, e.g., Auto Europe, LLC v. Connecticut Indem. Co.*, 321 F.3d 60, 68 (1st Cir. 2003) ("Maine law . . . broadly extends the duty to defend to claims that could be developed either legally or factually at trial so as to fall within the policy's coverage."); *Zurich Am. Ins. Co. v. Elec. Maine LLC*, 325 F. Supp. 3d 198, 202 (D. Me. 2018) (confirming that "the duty to defend is so broadly conceived that even legally insufficient claims may give rise to a duty to defend if it possibly fits within the policy"). The question of whether an insurer owes an insured a duty to defend is "a question of law" determined by the "comparison test," which requires a court to "compare[] the allegations of the underlying complaint with the provisions of the insurance policy." *Anderson,* 985 F.Supp. at 187. If the comparison test reveals there is "any legal or factual basis, which could be developed at trial, which would obligate the insurers to pay under the policy," then the insured is entitled to a defense. *Id.* When conducting the "comparison test," courts may only consider the allegations fairly alleged in the complaint. *Prime Tanning Co. v. Liberty Mut. Ins. Co.*, 750 F. Supp. 2d 198, 207 (D. Me. 2010).

While broad, the duty to defend is not without limits.[5] *Id.* Notably, an insurer may refuse to defend an insured if the allegations contained in the underlying complaint "fall entirely" within a policy exclusion. *Id.* (stating that if a policy "exclusion denies general coverage under the policies, [the insurer] does not have a duty to defend [the insured]" unless an exception to the exclusion applies); *City of S. Portland v. Me. Mun. Ass'n Prop.*

---

[5] For example, a duty to defend "cannot be triggered by pure speculation as to conduct or causes of action that are not either set forth in, or fairly suggested by, the allegations of the complaint." *W. World Ins. Co. v. Am. & Foreign Ins. Co.*, 180 F.Supp.2d 224, 232 (D. Me. 2002).

*& Cas. Pool*, 2017 ME 57, ¶ 7, 158 A.3d 11 ("A factual allegation in the complaint that would give rise to damages may not trigger the duty to defend if the allegations fall within an applicable exclusion."). However, when exclusions are included in an insurance policy, they must be read narrowly and must be "strictly construed against the insurer." *Sundaram v. COVERYS*, 130 F. Supp. 3d 419, 426 (D. Me. 2015); *Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 11, 942 A.2d 663 ("In construing insurance policies, exclusions are disfavored, and we construe them strictly against the insurer.").

### A. Canadian CGL Policy

The Defendant asserts, and the Plaintiffs do not dispute, that the Canadian CGL Policy does not trigger a duty to defend on the part of Liberty because it explicitly excludes coverage for incidents involving non-Canadian workers.[6] Dismissal of the Canadian CGL policy claim is therefore warranted.

### B. Umbrella Policy

As with the Canadian CGL Policy, the Defendant argues and the Plaintiffs do not dispute that the Umbrella Policy does not trigger a duty to defend on the part of Liberty because it specifically excludes coverage for non-Canadian workers.[7] Dismissal of the Umbrella policy claim is likewise warranted.

---

[6] Specifically, this policy provides, in relevant part, that "[t]his insurance does not apply to any liability for 'bodily injury' or 'personal injury' to: any 'employee' of any 'Insured' ordinarily resident in any country other than Canada." First Motion, Ex. A 39 (ECF No. 9-2, #126). The facts alleged in the Taylor Suit fall squarely within this exclusion.

[7] This policy expressly limits coverage outside of Canada by providing, in relevant part, that coverage is only available "to the extent that an 'occurrence' is covered under a 'Canadian primary policy' and for no broader coverage than is provided under such policy. Coverage hereunder is not provided in any circumstance where an 'occurrence' is not covered by virtue of an exclusion or restriction contained in the 'Canadian primary policy.'" First Motion Ex. C 33 (ECF No. 9-4, #242). As defined in this section

8

## C. U.S. CGL Policy

The U.S. CGL Policy extends bodily injury coverage to True North's "employees" or "managers" and provides that Liberty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and will have "the right and duty to defend the insured against any 'suit' seeking those damages." First Motion, Ex. B, 12, 29 (ECF No. 9-3). The coverage provision reaches Taylor's claims. However, the policy contains a variety of exclusions upon which Defendant relies.

The policy excludes coverage for bodily injury to an "'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." *Id.* at 13 ("Course of Employment Exclusion"). It also excludes coverage for "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." *Id.* ("Workers' Comp Exclusion"). Finally, the policy bars coverage for "bodily injury" to a person "arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." *Id.* at 38 (#189) ("Employment-Related Practices Exclusion"). I will consider the application of each exclusion in turn.

---

of the policy, "Canadian primary policy" refers to the "Canadian Primary Commercial General Liability Insurance Policy listed in the Schedule of Underlying Insurance"—the Canadian CGL Policy. *Id.* at 34 (#243). Because this policy mirrors the Canadian CGL policy's exclusions, this Umbrella policy does not trigger a duty to defend on the part of Liberty.

9

### 1. Course of Employment Exclusion

I consider first the factual allegations in the underlying suit relevant to this exclusion. As alleged in his complaint, Taylor was an employee who purchased and then ingested illicit drugs while on shift at his employer's facility, in clear violation of his employer's Alcohol and Drug Policy. Taylor Compl. ¶¶ 1, 4, 17, 18-19 (ECF No. 11-1). After ingesting these drugs and while pulling on boots that were "necessary" for him to be able to perform the duties associated with his employment, Taylor fell, struck his head on the floor, and lost consciousness. *Id.* ¶ 20. Taylor's coworkers then moved him to a shower and left him under running water for over four hours. *Id.* ¶ 24. Upon the arrival of emergency medical professionals, Taylor received treatment for a heroin overdose as well as hypothermia. *Id.* ¶ 30-33. Taylor's complaint alleges that because of the actions of his coworkers, not only were his initial injuries exacerbated, but he also sustained additional injuries. *Id.* ¶ 37.

Next, I consider the plain language of the U.S. CGL policy. Under its "course of employment exclusion," the policy excludes coverage for bodily injuries sustained by employees "arising out of and in the course of" either "employment" or "performing duties related to the conduct of the insured's business." First Motion, Ex. B, 13. The U.S. CGL policy does not include any further definition of what it means for an injury to arise out of and in the course of "employment" or "performing duties."

The Defendant argues that "but for the fact that Mr. Taylor was at his place of employment, his alleged injuries would not have occurred." First Motion 12. To support this argument, Defendant relies on a string of workers' compensation decisions interpreting

10

the phrase "arising out of and in the course of employment."[8] *See id.* at 12-16; Second Motion ¶ 10. Defendant argues that under the factors outlined in *Comeau v. Maine Coastal Services*, 449 A.2d 362, 367 (Me. 1982),[9] the scales tip in favor of a finding that Taylor's "injury arose out of and in the course of employment." First Motion 12-16. This is one reasonable interpretation of the phrase.

However, the Plaintiffs assert it would be equally reasonable to interpret the exclusion in a manner that would permit the finder of fact to "determine that Taylor's alleged purchase and ingestion of heroin and cocaine and his subsequent fall and injury were actions that fell outside the scope of his duties and the course of his employment." Second Opposition 4. To support this stance, they too refer to the *Comeau* factors and argue: "The facts, when proven, could go in a multitude of different directions. . . . It could be found, [for example], that such drug use was a deviation from Mr. Taylor's employment, or that such behavior was a self-created risk expressly prohibited by the plaintiffs." First Opposition 7-8.

---

[8] This reliance on workers' compensation cases when determining an insurer's duty to defend is not unprecedented. In fact, in *Northern Security Insurance Company, Inc. v. Sandra Dolley*, the Maine Supreme Judicial Court approved a similar use of workers' compensation definitions to construe the term 'in the course of employment,' stating: "Although this case involves the interpretation of an insurance contract, the words in the contract are borrowed from the workers' compensation laws, and we turn to case law in that area for guidance." 669 A.2d 1320, 1324 (Me. 1996).

[9] In *Comeau*, the Maine Supreme Judicial Court considered factors such as (1) whether the employee was promoting "an interest of the employer" or the activity was directly or indirectly beneficial to the employer, (2) whether the activities of the employee "work to benefit or accommodate the needs of the employer," (3) whether the activities of the employees were "within the terms, conditions or customs of the employment, or acquiesced in or permitted by the employer," (4) whether the employee's activity served "both a business and personal purpose, or represents an insubstantial deviation from the employment," (5) whether the "hazard or causative condition can be viewed as employer or employee created," (6) whether the employee's actions were "unreasonably reckless or created excessive risks or perils," (7) whether the employee's actions "incidental to the employment were prohibited by the employer either expressly or implicitly," and whether the "injury occurred on the premises of the employer." 449 A.2d at 365 (internal citations omitted).

For present purposes, I conclude that because the facts adduced at trial might "go in a multitude of different directions," the circumstances alleged plausibly suggest a duty to defend. The parties' fact-intensive weighing of factors also tends to reinforce Plaintiffs' position that the allegations in the underlying case may not "fall entirely" within the Course of Employment Exclusion. *See Prime Tanning Co.*, 750 F. Supp. 2d at 207.

2. *Workers' Comp Exclusion*

The Workers' Comp Exclusion bars coverage for "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." First Motion, Ex. B, 13. The Defendant argues that "because True North has affirmatively asserted a workers' compensation bar defense in the [Taylor Suit] and because Mr. Taylor has filed a workers' compensation claim," this exclusion bars coverage.[10] First Motion 16-17.

Taylor's workers' compensation claim and True North's affirmative defense do not necessarily rule out coverage. *See City of Old Town v. Am. Employers Ins. Co.*, 858 F. Supp. 264, 270 (D. Me. 1994). Prophylactic pleadings and affirmative defenses are not dispositive of the resolution of an insurer's duty to defend. My focus is directed to the allegations in the complaint and whether the penumbra of potential facts at trial might lead to a finding of coverage. Given the drug prohibition and Taylor's extended period of unconsciousness, Plaintiffs have alleged a plausible theory that might elude the Workers Comp Exclusion.

---

[10] During the course of the Taylor Suit, True North asserted as an affirmative defense the exclusivity provision of the Maine Worker's Compensation Act, 39-A M.R.S.A. § 104, arguing that True North's worker's compensation insurance provided coverage to Taylor. First Motion 6.

### 3. *Employment-Related Practices Exclusion*

Finally, the Employment-Related Practices Exclusion bars coverage for "bodily injury" to a person "arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." First Motion Ex. B 38 (ECF No. 9-3, #189). Once again, the policy provides no additional guidance (beyond the exclusion itself) regarding the definition of "employment-related practices."

Defendant contends that because "Mr. Taylor's complaint is replete with allegations regarding True North's enforcement of its Alcohol and Drug Policy" (in their view, an employment-related practice), "Taylor's allegations bring his claims squarely within the scope of this exclusion." First Reply 6. In contrast, the Plaintiffs argue for a strict construction of the exclusion and conclude that because the Taylor complaint "is void of any allegations that Taylor suffered any of the harms enumerated in the Employment-Related Practices Exclusion," Taylor's claim does not arise out of an employment-related practice. Second Opposition 5.

I acknowledge, as Defendant argues, that the language of the exclusion indicates that the list of employment-related policies or practices included in the policy is not exhaustive. Thus, one[11] question is whether True North's failure to enforce their Alcohol and Drug Policy is sufficiently similar to the examples of employment-related practices

---

[11] Once again, there is the potential for a distinction to be drawn by the fact finder between employee drug use in violation of policy, on the one hand, and acts and omissions related to the care of an unconscious individual, on the other.

13

provided in the policy for the exclusion to apply. *See, e.g., Perkins v. Maryland Cas. Co.*, 388 F. App'x 641, 643 (9th Cir. 2010) (adopting a similar analytical framework when determining whether false imprisonment could qualify as an "employment-related practice"). Because the answer is uncertain, I conclude the Plaintiffs have alleged a plausible basis for coverage notwithstanding the Employment Related Practices Exclusion.

### D. Summary

To the extent Plaintiffs' core coverage claim is premised on the U.S. CGL Policy, the allegations raise a plausible basis for relief. However, Defendant is entitled to dismissal of the contract claim to the extent it seeks coverage under the Canadian CGL Policy and the Umbrella Policy.

## II. MAINE'S UNFAIR CLAIMS SETTLEMENT PRACTICES ACT

In Count III of its Amended Complaint, True North asserts Liberty violated three provisions of the Unfair Claims Settlement Practices Act, thereby causing True North to "sustain[] damages for which they deserve to be compensated." Am. Compl. ¶ 25. Under the Act, an insurer is liable to its insured if the insured can prove the insurer violated one or more of five statutory prohibitions. 24-A M.R.S. § 2436-A(1). The three provisions cited by the Plaintiffs prohibit:

> "Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue," *id.* § 2436-A(1)(A);
>
> "Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim," *id.* § 2436-A(1)(D); and
>
> "Without just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear," *id.* § 2436-A(1)(E).

14

Plaintiffs base their arguments primarily on the fact that Liberty refused to provide a defense to True North in the Taylor Suit, despite True North's repeated assertions of a duty to defend. Plaintiffs also argue Liberty inappropriately and without proper investigation concluded that "none of the Liberty Policies provide coverage to True North." Second Opposition 6; Am. Compl. ¶ 23. In their later pleadings, Plaintiffs also assert Liberty "cited the incorrect policy provisions in the incorrect insurance policy . . . to justify its refusal." Second Opposition 6.

I conclude Plaintiffs have alleged one or more plausible factual bases for their claim under the Act. In particular, Rule 9(b) permits Plaintiffs to allege in general terms Defendant's knowledge of a misrepresentation. Additionally, "the touchstone" of the "without just cause" provision "is whether the insurer lacked any legitimate or reasonable basis to contest liability." *Sch. Union No. 37 v. United Nat'l Ins. Co.*, 617 F.3d 554, 564 (1st Cir. 2010). Given my conclusion that Plaintiffs have stated a claim under the U.S. CGL policy, I conclude that the related claim under the Act is adequately alleged and should be assessed with the benefit of discovery, as were the claims asserted in, for example, *Curtis v. Allstate Insurance Company*, 787 A.2d 760 (Me. 2002), and *Saucier v. Allstate Insurance Company*, 742 A.2d 482 (Me. 1999).

### III. DECLARATORY JUDGMENT

Count II of Plaintiffs' First Amended Complaint requests a declaratory judgment regarding the "rights and responsibilities of the parties to the contracts of insurance implicated in this case." Am. Compl. 3. In accordance with my conclusions regarding

Plaintiffs' claim for breach of contract, Defendant's Motion to Dismiss is granted as to the Canadian CGL and Umbrella policies, but denied as to the U.S. CGL Policy.

### IV. INJUNCTIVE RELIEF

Count IV of Plaintiffs' First Amended Complaint requests "temporary and permanent injunctive relief in the form of an order directing Liberty to provide a defense to the plaintiffs against the claims asserted by Mr. Taylor, and requiring Liberty to communicate in a substantive and responsive manner with its insureds as required by the policy terms as well as by law." Am. Compl. ¶ 27. Once again, my conclusions regarding Plaintiffs' claim for breach of contract lead me to grant Defendant's Motion to Dismiss as to the Canadian CGL and Umbrella policies, but deny the motion as to the U.S. CGL Policy.

### CONCLUSION

For the foregoing reasons, the Court dismisses as moot the Motion to Dismiss (ECF No. 9) and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 13). To the extent they are premised on the Canadian CGL and Umbrella policies, Counts I-IV are dismissed. All claims survive, however, to the extent they are premised on the U.S. CGL policy.

**SO ORDERED.**

**Dated this 19th day of February, 2019.**

/s/ Lance E. Walker
**LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**